## A11A1681. MCLEMORE et al. v. GENUINE PARTS COMPANY.
### (722 SE2d 366)

DOYLE, Presiding Judge.

Evelyn L. and Bobbie H. McLemore filed suit against Genuine Parts Company d/b/a Napa Auto Parts ("GPC") after Evelyn sustained injuries when she fell from a curb in a GPC parking lot. The McLemores appeal the trial court's grant of summary judgment to GPC. We affirm, for the reasons that follow.

> Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party.[1]

So viewed, the record shows that at approximately 11:00 a.m. on November 13, 2007, a GPC store in Columbus hosted a tool show in the store parking lot, including a customer cookout with tables and chairs. On that day, Evelyn drove her husband, Bobbie, to the GPC store to buy hydraulic fluid. According to Evelyn, because the GPC parking lot was filled with people, she parked in a separate lot across the street from the store.

As Evelyn approached the store, she stepped up onto a curb and then fell backward, landing on a nearby chair. Several men assisted her and set her in a chair, where she waited for five to ten minutes before she and Bobbie entered the GPC store and purchased hydraulic fluid. Evelyn and Bobbie then exited the store using the handicap ramp and walked to their car. Thereafter, they stopped at a restaurant and then went to the emergency room, where x-rays revealed that Evelyn had two broken ribs. The next morning, Evelyn's doctor concluded that she also had a broken hip, which required surgery.

Evelyn later deposed that she and her husband had shopped at the GPC store on three or four occasions prior to her fall. They had a handicap sticker on the car for Bobbie, who was partially blind, and therefore they parked in the handicap parking space and used the handicap ramp to enter and exit the store on their previous visits. Evelyn testified that there "was a lot of distraction" in the parking lot on the day of her fall. There were tables and chairs set up in front of the store to her left as she attempted to step onto the curb to enter the store. Evelyn deposed that the curb, which she was able to see as she approached it, was "higher than usual" and that it was "a higher

---

[1] (Footnote omitted.) *Pirkle v. Robson Crossing, LLC*, 272 Ga. App. 259 (612 SE2d 83) (2005).

step than other curbs." Although she "[did not] think [she would have fallen] if it had been a regular height curb," Evelyn conceded that she did not know "what it was that made [her] fall backwards." In a subsequent affidavit, Evelyn testified that when she and Bobbie entered the parking lot, she "was unable to see or walk over to the ramped entrance to the store because of all of the luncheon activities taking place, which blocked [her] path." The GPC store manager, however, testified that the handicap ramp was not obstructed by the tool show or in any other manner on the day of Evelyn's fall.[2]

As the McLemores walked toward the store together, Bobbie stepped onto the curb and then saw Evelyn step up "almost simultaneously." According to Bobbie, he "could see the curb and . . . the sidewalk in front of [him]" as he approached them, and nothing obstructed his view of the curb, which he could tell "was taller or higher than the average curb."

The McLemores' expert engineer, Herman Hill, averred that the curb where Evelyn fell

> was defectively created, designed, built, and maintained by [GPC], and that it constituted a trip hazard. I am familiar with the Georgia State Minimum Standard Building Code requirements and other industry standards applicable to proper stair design and safety. It is my opinion that [GPC] failed to substantially comply with the standards referred to above . . . because the stair riser height where the fall occurred exceeded the maximum allowable height by at least one inch.

Hill further opined that GPC

> negligently operated this commercial facility in violation of the applicable regulations and standards for maintenance of accessible features at a public accommodation and commercial facility under the Americans with Disabilities Act (ADA) and that such negligence was a proximate cause of the serious injury to . . . Evelyn. . . .

On appeal, the McLemores contend that the trial court erred by granting summary judgment to GPC on their premises liability claim. We disagree.

---

[2] Although the store manager helped to set up the tool show and to break it down at the end of the day, he remained in the store during the course of the day.

Pursuant to OCGA § 51-3-1,

> [w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

To prevail on a "trip and fall" claim,

> the plaintiff must prove that (1) the premises owner had actual or constructive knowledge of the hazard; and (2) the plaintiff lacked knowledge of the hazard, despite her exercise of ordinary care, due to actions or conditions within the owner's control. However, the plaintiff's evidentiary burden concerning the second prong is not shouldered until the owner establishes that the plaintiff was negligent, that is, she intentionally and unreasonably exposed herself to a hazard of which she knew or, in the exercise of reasonable care, should have known existed. With respect to the second prong, we determine whether the record shows plainly, palpably[,] and without dispute that plaintiff had knowledge of the hazard equal or superior to that of defendants or would have had equal or superior knowledge had the plaintiff exercised ordinary care for personal safety.[3]

When the claim

> involves allegations of a static, dangerous condition, the rule is well established that the basis of the proprietor's liability is his superior knowledge and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does.[4]

"If nothing obstructs the invitee's ability to see the static condition, the proprietor may safely assume that the invitee will see it and will realize any associated risks."[5]

---

[3] (Punctuation and footnote omitted.) Id. at 260-261.

[4] (Punctuation omitted.) *Perkins v. Val D'Aosta Co.*, 305 Ga. App. 126, 128 (699 SE2d 380) (2010).

[5] (Punctuation omitted.) *Becton v. Tire King of North Columbus*, 246 Ga. App. 57, 59 (539 SE2d 551) (2000).

Thus, even if GPC had knowledge of the allegedly hazardous condition of the curb, the McLemores cannot recover if Evelyn had equal or superior knowledge or if her ability to see the curb was unimpeded. Although Evelyn testified that "[i]t . . . seemed like [there] was a lot of distraction" in the parking lot, meaning there were "a lot of people . . . moving around . . . ," she also testified that she was able to see the curb, including its height, as she approached it. Bobbie, who was traversing the parking lot and curb at the same time, conceded that he was able to see the curb as he approached it and observed that it was higher than average.

As we noted in *Wright v. JDN Structured Finance*,[6]

> [o]ccupiers of premises whereon the public is invited to come are not required to keep their parking lots and other such areas free from irregularities and trifling defects. One coming upon such premises is not entitled to an absolutely smooth or level way of travel. The ultimate issue is whether [GPC] was negligent in maintaining a hazardous condition on the property, and in everyday life, persons are required to negotiate floors, steps[,] and doorways. Even if the curbed sidewalk was hazardous as [the McLemores] assert[ ], the condition was open and obvious, and thus, in the exercise of ordinary care, [Evelyn] could have avoided it. There is no duty to warn of the obvious.[7]

We similarly reject the McLemores' argument that the "distraction theory" precludes summary judgment.

> The distraction theory covers situations where the plaintiff's attention is distracted by a natural and usual cause, and this is particularly true where the distraction is placed there by the defendant or where the defendant in the exercise of ordinary care should have anticipated that the distraction would occur.[8]

> The relevant inquiry, however, is whether appellant's view of the [hazard] was obstructed at the point immediately *before* [s]he was about to step [o]nto it. . . . Where an obstruction is perfectly obvious and apparent, so that one looking ahead would necessarily see it, the fact that the

---

[6] 239 Ga. App. 685 (522 SE2d 4) (1999).

[7] (Citation and punctuation omitted.) Id. at 686-687 (2).

[8] (Punctuation omitted.) *Gray v. Alterman Real Estate Corp.*, 196 Ga. App. 239, 239 (396 SE2d 42) (1990).

plaintiff merely failed to look will not relieve h[er] from the responsibility for h[er] misadventure.[9]

Here, Evelyn did not testify that the purported distraction of people attending the tool show in any way obstructed her view of the curb. "The proof offered clearly puts this case within the line of cases involving the plain view doctrine and effectively eliminates any distraction theory."[10]

We agree with the trial court that Evelyn had equal knowledge of any hazard presented by the height of the curb. Accordingly, the trial court did not err by granting summary judgment to GPC.[11]

*Judgment affirmed. Ellington, C. J., and Miller, J., concur.*

DECIDED JANUARY 24, 2012.

*Matthew N. Pope*, for appellants.
*Hawkins, Parnell, Thackston & Young, Stephen C. Collier*, for appellee.

---

[9] (Citations omitted; emphasis in original.) Id. at 240-241.

[10] (Punctuation omitted.) Id. at 241

[11] See *Pirkle*, 272 Ga. App. at 262; *Wright*, 239 Ga. App. at 687 (2); *Warnke v. Pace Membership Warehouse*, 215 Ga. App. 33, 34 (449 SE2d 629) (1994). Compare *Perkins*, 305 Ga. App. at 129-130 (reversing summary judgment to defendant because the plaintiff, who was injured when he stepped off a high curb, presented evidence that "the step down from the curb was difficult to see when approached from above due to lighting conditions, darkened surfaces[,] and lack of warning").